Walter Trepte v. Commissioner. Margaret Trepte v. Commissioner.
Trepte v. Commissioner
Docket Nos. 12515, 12516.
United States Tax Court
1948 Tax Ct. Memo LEXIS 179; 7 T.C.M. (CCH) 317; T.C.M. (RIA) 48093; May 28, 1948
*179 George H. Stone, Esq., 1004 San Diego Trust & Savings Bldg., San Diego, Cal., and Wm. D. Morrison, C.P.A., for the petitioners. John H. Pigg, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These proceedings, consolidated for hearing and disposition, involve deficiencies in income and victory tax liabilities for the year 1923, as follows: Petitioner
Docket No.
Deficiency
Walter Trepte
12515
$23,183.84
Margaret Trepte
12516
29,480.82 The year 1942 is involved in these proceedings by reason of the "forgiveness" feature provided by section 6 of the current Tax Payment Act of 1943, relating to tax for 1942 and 1943. The issues to be determined are: (1) Did the respondent err in his determination that the business carried on under the name of the Trepte Construction Company during the taxable years was not a bona fide partnership, for income tax purposes, composed of petitioners, Walter Trepte, Margaret Trepte and their two sons and that the income was community income of Walter Trepte and his wife? (2) Did the respondent err in his determination that the alleged assignment by petitioner, Walter Trepte, *180 to the alleged partnership of Trepte Construction Company, of his interest in the joint venture, known as Golden & Trepte Construction Company is ineffective for income tax purposes? These cases were submitted on a stipulation of facts and oral testimony. The facts as stipulated are so found. Such parts thereof as it is considered necessary to set forth are included with other facts found from evidence adduced in our Findings of Fact Walter Trepte (hereinafter and sometimes referred to as petitioner) and Margaret Trepte are husband and wife and have resided in San Diego, California, since some time prior to their marriage in 1916. Neither petitioner nor his wife had any property prior to their marriage. All property held by either of them is community property. Income tax returns for the periods here involved were filed with the collector of internal revenue for the sixth district of California, at Los Angeles. Petitioner's father started in the construction business at San Diego, California, in 1895. From 1910 to 1912, petitioner studied structural design at California School of Mechanical Arts, San Francisco. From 1912 to 1917 he worked for his father; the last two years *181 of this period was spent on a ranch, owned by his father, in the Imperial Valley. In 1917, petitioner's father and a partner, one Rambo, were conducting the business. At that time petitioner gave his father a note for Rambo's share of the business, after which petitioner and his father conducted the business as a partnership. The note was paid out of petitioner's share of the earnings. In 1928, petitioner bought his father's interest in that partnership. The dissolution was effected by a property division and a cash settlement. Thereafter, petitioner operated his general contracting business under the name of "Walter Trepte Builder," as a sole proprietorship until the date of the creation of the alleged partnership of Trepte Construction Co. on January 1, 1942. The business of petitioner's father was commercial and engineering contracting. Petitioner continued in this same field after he acquired the business in 1928. The work is technical in that it requires a knowledge of and skill in construction engineering, material and labor markets for the purpose of submitting bids. Petitioner's architectural engineer education gave him real assistance in this phase of the business. *182 Some time prior to July 6, 1940, petitioner and one M. H. Golden associated themselves as joint venturers to operate as "Golden-Trepte Construction Co.," (hereinafter sometimes referred to as Golden-Trepte) for the purpose of engaging in contracting work for the Federal Government. Golden-Trepte obtained a large contract from the Navy Department for various types of construction in and around the naval facilities in the San Diego area. The contract was signed by petitioner and Golden, individually, on July 6, 1940. The contract was approved by the Navy Department on July 11, 1940. The contract, as it originally existed, contemplated construction work in the amount of approximately $3,500,000. However, it was extended to cover projects which eventually had a cost of about $21,000,000. Under the contract, Golden-Trepte was required to obtain all material and supply all labor. The projects contemplated by this contract and extensions were completed in 1944. Work was begun in 1940. This contract was not obtained on bid but was negotiated at the request of the Navy. While engaged on the various projects under the Navy contract, Golden-Trepte also undertook other contract work for various *183 governmental agencies and private corporations, including one fuel-depot project for the Navy which was not included in the above contract. Construction jobs were undertaken for Rohr Aicraft Company, as agent for Defense Plant Corporation, and San Diego Gas & Electric Company. The fuel-depot job and the Rohr Aircraft job had value of approximately $1,750,000. In addition to these, the Trepte Construction Co. also did work for some customers, particularly the Ryan Aircraft Co. Petitioner had a crew at Ryan from 1939 until the end of the war. The Navy contract provided that Golden-Trepte should designate a construction superintendent to have complete charge of all work under the contract. It further provided that no person shall be assigned as superintendent, Chief Engineer, Chief Purchasing Agent, Chief Assistant, or similar position in the field organization or as principal assistant to such persons, until the contracting officer shall approve the qualifications and experience of the person proposed for such assignment. The Rohr contract provided that the "contractor" [Golden-Trepte] shall keep on the job, at all times, a qualified representative, satisfactory to the other contracting *184 party. Prior to January 1, 1942, petitioner had between 75 and 100 employees in his individual business. Golden-Trepte had about 1,500 employees at the peak, which was reached in December 1941. The foreman and superintendent and others who had technical skills giving them responsibility comprised approximately 10 to 20 per cent of the employees for both organizations. In the summer of 1941, the Navy contract was extended to include certain construction on San Clemente Island, about 100 miles off the coast of San Diego. Petitioner flew out to this project about once a week; due to fog, it was very hazardous. On an earlier trip the plane had nearly crashed and at that time he and Golden discussed what would become of the Navy contract in the event of one or both of their deaths, so petitioner told Golden that he "had been considering having his sons go into partnership" with him, and that he thought that "they should get one formed" as soon as they could to carry on the business if anything happened to them. Petitioner discussed the desirability of a "partnership" with his wife and two sons on several occasions and pointed out to them how he had been a "partner with his father" *185 and showed them the advantage of coming into a "business which already had an established name for honesty and integrity." The latter part of 1941, petitioner consulted an attorney about drawing up a partnership agreement, and a written "partnership agreement," effective January 1, 1942, was executed, naming as partners petitioner, his wife and sons, Walter B. Trepte and Albert Eugene Trepte. A certificate of doing business under a fictitious name, dated May 11, 1942, was filed with the State of California. On April 18, 1942, petitioner and his wife executed an instrument entitled "Declaration of Emancipation of Minor," which purported to free Albert Eugene Trepte from all control by his parents as of January 1, 1942. On April 22, 1947, after he attained his majority, Albert executed an instrument purporting to ratify and confirm his act in executing the document entitled "Articles of Co-Partnership," dated January 1, 1942. In the preamble, the Articles of Co-Partnership recite as follows: "THAT, WHEREAS, WLATER [WALTER] TREPTE has for some time past been conducting a general contracting business in the City of San Diego, California, and has been conducting a joint venture *186 with M. H. GOLDEN under the name of GOLDEN & TREPTE CONSTRUCTION COMPANY, and "WHEREAS, said M. H. GOLDEN and WALTER TREPTE in the fall of 1941 agreed among themselves to each form a separate family partnership as of January 1, 1942 for the ownership, management and operation of their respective contracting business and to include in their respective family partnerships the assets, accrued earnings and future earnings of said GOLDEN & TREPTE CONSTRUCTION COMPANY, and "WHEREAS, said WALTER TREPTE has conveyed to the parties hereto all of his interest in his contracting business and his interest in the assets, accrued earnings and future earnings of said GOLEN [GOLDEN] & TREPTE CONSTRUCTION COMPANY, and the parties hereto desire to hold all of said property as co-partners and to operate said contracting business as a co-partnership." The "Partnership Agreement" provided that petitioner and his wife each have a 26 per cent interest and each of the boys have a 24 per cent interest; that the "company" shall have an existence of 20 years from January 1, 1942; also, the capital of said partnership shall consist of "office equipment, planing mill equipment, trucks, machinery, cash *187 in the bank, accounts receivable, naval air station job equity, being the equity in the partnership assets of GOLDEN & TREPTE CONSTRUCTION COMPANY, and all other personal property now used by WALTER TREPTE in said business and also the good will of said business subject to all the liabilities of said business as of January 1, 1942, which appear on the books of said WALTER TREPTE as of said date, as follows:" ASSETS
Cash in bank
$29,197.68
Accounts receivable
48,023.52
Work in progress
29.06
Naval Air Station job equity *
88,458.88
Miscellaneous building material
1,846.81
Fixed equipment cost
$14,147.12
Depreclation
3,510.14
Net
10,636.98
Total Assets
$178,192.93
LIABILITIES
Accounts payable
$15,079.36
Notes payable to banks
35,000.00
Reserve for insurance
612.91
Reserve for social security taxes
1,145.23
Reserve for North Island equipment
1,600.54
Rental adjustment
Total Liabilities
$ 53,438.04
Net Worth
$124,754.89
Each *188 of the sons executed and delivered to his parents a promissory note in the amount of $29,941.17, the "purchase price" of their respective interests in the alleged partnership. The agreement provided that petitioner should be general manager of the "Partnership." His duties as manager of the "partnership" were substantially the same as his duties as sole owner of the business before January 1, 1942. Each "partner" was to share in all profits and losses to the extent of the respective interest of each. The agreement further provided as follows: "* * * After the payment of salaries and certain allowances which shall be fixed from time to time by partners holding a majority interest all profits arising from the operation of said partnership shall be added to the capital of said partnership so long as such a majority interest so decides or in the discretion of the holders of a majority interest may be distributed but any distribution to the partners, Walter B. Trepte and Albert Eugene Trepte, will first be applied upon the payment of any outstanding balance of their notes before distribution be made to them individually." The agreement provided that deposits to the partnership bank *189 account could be made for the "partnership" by any "partner" or agent of the "partnership." Checks could be drawn on any partnership account by such of the "partners" and their agents as were chosen from time to time by holders of a majority interest. The agreement further provided: "No partner shall during the continuance of the partnership carry on any business in competition with, or be concerned or interested directly or indirectly in the same kind of business as that carried on by the partnership in the County of San Diego, State of California, without the consent in writing of the other parties hereto, except consent is hereby given to WALTER TREPTE to carry on the business of GOLDEN & TREPTE CONSTRUCTION COMPANY and other partnerships, joint ventures or corporations. "Since the time and efforts of partner WALTER TREPTE belong to said family co-partnership, and since the investment in the joint venture of GOLDEN & TREPTE CONSTRUCTION COMPANY also belongs to the TREPTE CONSTRUCTION COMPANY, such of his time as may be spent on the joint ventures of GOLDEN & TREPTE CONSTRUCTION COMPANY shall be considered partnership property and the resulting earnings of the GOLDEN and TREPTE *190 joint venture shall be partnership earnings. "That any and all earnings from personal services outside of this family co-partnership shall be given due consideration in allocating partnership profits and losses." Walter B. Trepte, the son of petitioners herein, and one of the alleged partners, was born in San Diego, California, on November 6, 1918, and was 23 years of age on January 1, 1942. He went through high school, and had one-half year of college work at California State College. Prior to January 1, 1942, the alleged date of the partnership, Walter was employed at various times on his father's construction business. He so worked in the summer of 1935 and 1936, the fall of 1938, the entire year of 1939, and from July of 1940. In 1935 and 1936, he worked as a truck driver. In 1938, he did clerical work as assistant to the bookkeeper and timekeeper. For the remainder of 1940, he was employed by Golden-Trepte in the time-keeping office at the naval facility at North Island. He remained in this position until June 1941, when he went to the job at the Naval fuel depot, for Golden-Trepte. At the fuel depot he was in charge of personnel and timekeeping, did some bookkeeping and certain *191 security work. He hired and fired employees on the authority of Trepte or Golden. Certain employees, those on an hourly or day-to-day basis, he hired or fired as the need for their services rose or fell. From 1935 through 1941, he was carried on the pay rolls as an employee. His compensation ranged from $15 per week in the beginning to $35 per week in 1941 when he worked for Golden-Trepte. After the formation of the "partnership" on January 1, 1942, Walter B. Trepte worked for Golden-Trepte at the fuel depot. In June or July he went to the Golden-Trepte job at Rohr Aircraft Corporation, and in October or November he went back to the Golden-Trepte job at the Naval Air Station, where he remained until the completion of the contract in October or November of 1943. From October or November 1943, until the middle of 1944, he worked for the "partnership" at Rohr Aircraft, and following that he worked about four months at the Naval Air Station for Golden-Trepte. Since that time he has worked on Trepte Construction Company projects. Prior to January 1, 1942, Walter B. Trepte had never assembled the data necessary to prepare a bid for construction work, though he did help petitioner and estimators *192 employed by petitioner to do so. Between January 1, 1942, and December 31, 1943, he assisted in the same manner. The work Walter B. Trepte performed prior to January 1, 1942, was done under petitioner's supervision. Much of the work after that date up to December 31, 1943, was also under petitioner's supervision. Some of the work performed during this period was approved by the "officer in charge of the Navy." From January 1, 1942, on, he was paid a regular salary of $55 per week by Trepte Construction Company. He received extra remuneration from Rohr Aircraft job which was put into the "partnership." For the years 1943, 1944, 1945 and 1946, year-end bookkeeping entries were made on books of Trepte Construction Company, purporting to adjust Walter B. Trepte's salary to a basis of $4,800 per year. A drawing account was set up in the books of the "partnership" for Walter B. Trepte. His salary was charged to it and also certain other personal expenses, payments made on the note held by his parents, and all withdrawals for payments of Federal and State income taxes. He also had a "capital account" in the books to which was credited his purported original 24 per cent interest and a like *193 proportion of the subsequent profits from the "partnership" for each year. He has seen his drawing and capital accounts each year, but his examination was cursory and for his own information. He is not an accountant though he does understand something about the theory of accounting. Walter B. Trepte was authorized by the majority-interest partners to sign checks on the accounts of the Trepte Construction Company as provided in the alleged partnership agreement and did sign them. He also signed checks on his father's account while the business was under the name of Walter Trepte, Builder. Other persons also had authority to sign checks for Trepte Construction Company. All payments made by Walter B. Trepte on his note, held by his parents, and all payments for Federal and State income taxes were made from profits of the business of Trepte Construction Company. The construction business requires one having knowledge and experience in order to make bids for jobs, and prior to 1942 petitioner was the only one qualified to do this work, though he hired estimators who prepared estimates which were ultimately approved or disapproved by him. After 1942, the same has generally been true, *194 although since 1941 all or most of the construction work performed by Walter Trepte, builder, has been on Government contract. Walter B. Trepte had no inclination toward that technical end of the business. Albert Eugene Trepte, son of petitioners herein and one of the alleged partners in Trepte Construction Company, was born September 8, 1925. He was 16 years of age on the date of creation of the alleged partnership. He worked for his father in the construction business in the summer of 1941 at the Naval fuel depot as crewmen on a small craft and on a pile driver. In the summer of 1942, he worked on the Ryan Aircraft Company job as an assistant carpenter. On the fuel-depot job he received 75 cents per hour and 85 cents per hour on the Ryan job. He went to summer school in 1943. On February 28, 1944, he was drafted into the United States Navy and was discharged June 7, 1946. During part of 1946, he worked "down there in a capacity of rustling material." In 1947, he worked in the office taking care of bills. In September 1946, he entered on a course of study in architectural engineering at California State Polytechnic College at San Louis Obispo. This is a two-year course. The note *195 given by Albert Eugene Trepte for his alleged interest in the Trepte Construction Company was paid from profits of the business. The "Company" paid for his personal needs, including clothing, recreation, tuition, school, expenses. It also paid his Federal and State individual income taxes. All of these items were charged against a drawing account in his name on the books of Trepte Construction Company. In 1942, 1943, 1945 and 1946, petitioner drew $20,000 per year as salary from the alleged partnership. In 1944, due to decreased business, he drew $10,000. Petitioner was reasonably familiar with the various revenue bills of 1940, 1941 and 1942. He was reasonably familiar, from previous experience, with the amount of tax he would have to pay on his profits. He had a certified public accountant audit his books and prepare returns before the "partnership" and the same person performed similar work after the date of the creation of the alleged partnership. The books (Account No. 293) of Trepte Construction Co. show the following as to withdrawals by Walter B. Trepte: Checks
Checks
Collector of
Franchise
drawn
drawn
Note and
Internal
Tax
to Walter
for Walter
Year
Interest
Revenue
Commission
B. Trepte
B. Trepte
Total
1942 **
$ 495.00
$ 495.00
1943 ***
$11,554.74
$14,036.58
$ 776.39
2,085.00
$ 10.30
28,463.01
1944
10,802.38
6,682.24
446.88
7.55
17,939.05
1945
10,500.00
1,740.59
104.38
20.00
12,364.97
1946
24,827.76
638.46
100.00
591.53
26,157.75
1947 ****
6,727.80
648.21
1,211.11
8,587.12
Total
$32,857.12
$54,014.97
$2,614.32
$2,680.00
$1,840.49
* $94,006.90
*196 The books of Trepte Construction Co. show the following as to "capital of Walter B. Trepte:" Date
Descriptive Particulars
Debits
Credits
Balance
Mar. 31, 1943
Transfers of capital from Walter Trepte
$28,941.17
$28,941.17
Mar. 31, 1943
Profit and loss 1942
29,665.07
58,606.24
Sept. 18, 1943
Adj. error in previous entry recording share
purchased from Walter Trepte
1,000.00
59,606.24
Feb. 16, 1944
Closing 1943 entries
$26,877.05
Feb. 16, 1944
Closing 1943 entries
23,664.00
56,393.19
Dec. 30, 1944
Walter B. Trepte withdrawals
17,843.71
Dec. 30, 1944
Profit and loss - 1944 Distribution
8,336.56
46,886.04
Dec. 31, 1945
Walter B. Trepte withdrawals
10,472.65
Dec. 31, 1945
Profit and Loss - 1945 Distribution
25,389.29
61,802.68
Dec. 31, 1946
Walter B. Trepte withdrawals
24,364.00
Profit and Loss - 1946 Distribution
25,067.35
62,506.03
*197 The books (Account No. 294) of Trepte Construction Co. show the following as to "withdrawals by Albert Eugene Trepte:" Checks
Checks
drawn to
drawn for
Note
Collector
Franchise
Albert
Albert
and
of Internal
Tax
Eugene
Eugene
Year
Interest
Revenue
Commission
Trepte
Trepte
Total
1943 *
$11,554.74
$12,413.21
$ 987.11
$ 750.00
$ 5.00
$25,710.06
1944
10,529.78
5,302.29
346.76
676.88
** 16,855.71
1945
10,463.27
52.23
55.65
10,571.15
1946
20,110.97
428.77
500.00
186.23
21,225.97
1947 ***
4,800.55
417.13
750.00
44.80
6,012.48
$32,547.79
$42,679.25
$2,235.42
$2,000.00
$912.91
$80,375.37
The books of Trepte Construction Co. show the following as to "capital of Albert Eugene Trepte:" Date
Descriptive Particulars
Debits
Credits
Balance
Mar. 31, 1943
Transfer of capital from Walter Trepte
$28,941.17
$28,941.17
Mar. 31, 1943
Profit and Loss - 1942
29,665.07
58,606.24
Sept. 18, 1943
Adj. Error in previous entry recording share
purchased from Walter Trepte
1,000.00
59,606.24
Feb. 16, 1944
Closing 1943 Entries
$25,710.06
Feb. 16, 1944
Closing 1943 Entries
23,664.00
57,560.18
Dec. 30, 1944
Albert Eugene Trepte withdrawals
16,646.71
Dec. 30, 1944
Profit and Loss - 1944 Distribution
8,336.56
49,250.03
Dec. 31, 1945
Albert Eugene Trepte withdrawals
10,571.15
Dec. 31, 1945
Profit and Loss - 1945 Distribution
25,389.28
64,068.16
Dec. 31, 1946
Albert Eugene Trepte withdrawals
21,225.97
Dec. 31, 1946
Profit and Loss - 1946 Distribution
25,067.35
67,909.54
*198 Partnership returns of income filed with the collector of internal revenue for the Trepte Construction Co. showed the following in schedule J: 1942
1943
Ordinary
Long Term
Ordinary
Long Term
Name
Net Income
Gain
Net Income
Gain
Walter Trepte
$ 60,822.35
$ 686.93
$ 44,467.92
$ 584.05
Margaret Trepte
57,054.46
644.37
24,980.04
327.98
Walter B. Trepte
29,529.06
333.49
25,523.78
335.11
Albert E. Trepte
29,009.80
327.63
23,058.26
302.87
Total
$176,415.67
$1,992.42
$118,030.00
$1,550.01
Opinion Factually, the first issue in this case follows the now familiar pattern of family partnerships, and is in many respects similar to , and . Since this case arises in a community property state (California) and there is no serious contention concerning the wife's interest in the business, our consideration will be directed primarily to the alleged interest of the two sons - Walter B. and Albert Eugene. Petitioner argues "That vital and valuable services were rendered by each of the sons to the co-partnership; that the two sons participated *199 in the control and management of the business; that each of the sons obtained by purchase his partnership interest in the co-partnership, and went into debt to obtain such interest." As to capital contribution of an alleged partner, the Tower case establishes the rule that whether a capital contribution to the business originates with the one making the contribution is a factor to be considered. The wife in the well-known Lusthaus case signed notes and later had the notes paid off out of the earnings of the business. In that case the Supreme Court of the United States concluded that the wife did not invest capital originating with herself. Petitioners' sons have no stronger case than did the wife in the Lusthaus case. The sons signed notes and the notes were retired by the application of earnings from the business, but there was no investment of new capital in the business, i.e., no new capital that was not already available for use in the business. The Tower case also established the rule for one to be a partner of a so-called "family partnership" from "services" standpoint, that the alleged partner must substantially contribute to the control and management of the business or *200 otherwise perform vital additional services. We, therefore, consider next whether the sons contributed such services as, under the Tower case and others to the same effect, would justify recognition of them as partners. As to Albert Eugene, it is clear, we think, that there was no such service contribution. At the time the "partnership" was created, he was only sixteen years of age. He worked some in the summer of 1941 for petitioner as a crewman on a small craft and on a pile driver, for which he received a small hourly wage. In the summer of 1942, he worked as an assistant carpenter on the Ryan job for an hourly wage of 85 cents. In 1943, he performed no services and in 1944 he entered the United States Navy. He was discharged in 1946 and soon thereafter enrolled in college. It appears that he did not substantially contribute to the control and management of the business or otherwise perform vital additional services. Walter B. is in a different position in that he was older and was earning a salary of $35 per week before January 1, 1942, and $55 per week thereafter, but that fact only serves to refute a contribution of such services by him as would support a partnership. He was *201 paid both before and after formation of the alleged partnership for about the same services. For the years 1943, 1944, 1945 and 1946, year-end bookkeeping entries were made on the books of the "partnership," purporting to adjust his salary to a basis of $4,800 per year. The services he performed were of a clerical nature, including time keeping, bookkeeping, some personnel work and the like, for which we think he was adequately paid through the compensation he received in the form of salary. Petitioner stated, at the hearing, that Walter B. was his (petitioner's) assistant but produced no evidence as to the date he became such or what his duties were in that capacity. We think, in general, that services do not greatly affect this case. We find neither son adding "vital additional service" which would take the place of capital contributed because of formation of a partnership. In addition to the above inquiry as to the presence of these elements deemed by the Tower case essential to partnerships recognizable for Federal tax purposes, other facts, in our opinion, compel a conclusion that there is not here presented such partnership. Looking at all the facts, we can not say that such *202 a partnership was formed January 1, 1942. Petitioner testified that it was a gradual change into a partnership. In our opinion, the partnership either started January 1, 1942, or not at all. The fact that capital accounts were not set up for the sons until March 31, 1943, indicates no partnership on the alleged date of formation, January 1, 1942. The date first appearing on Albert Eugene Trepte's withdrawal account was March 27, 1943, the first on Walter B. Trepte's withdrawal account was November 30, 1942. Though it is claimed by petitioner that the sons had free access to withdraw their share of the profits from the business, the facts presented give us reason to believe otherwise. According to the books presented in this case, there has been added to Walter B. Trepte's capital account $112,122.27, indicating his share of the profit of the Trepte Construction Co. for the years 1942 to 1946, inclusive. His withdrawals (including September 26, 1947) have been approximately $94,006.90. Of this amount, $2,680 was indicated as "checks drawn to Walter B. Trepte" and $1,840.49 as "checks drawn for Walter B. Trepte." The remainder of the $94,006.90 was for "Note & interest," "Collector of *203 Internal Revenue" and "Franchise Tax Comm." In like manner there has been added to Albert Eugene Trepte's capital account $112,122.26 as his share of the profit from the Trepte Construction Co. His withdrawals (including September 3, 1947) have been approximately $80,375.37, of this amount, $2,000 was indicated as "Checks drawn to Albert Eugene Trepte" and $912.91 as "checks drawn for Albert Eugene Trepte." The remainder of the $80,375.37 was for "notes and interest," "Collector of Internal Revenue" and "Franchise Tax Comm." There is nothing in the record to indicate that the sons exercised any freedom in regard to withdrawal of their share of the profits. This is not only true for the years 1942 and 1943, but the years following. Neither does the partnership agreement indicate a true partnership. The agreement provides that the profits and losses are to be divided as follows: 26 per cent to petitioner, 26 per cent to his wife, and 24 per cent to each son. However, the following statement appears in paragraph 11 of the agreement: "That any and all earnings from personal services outside of this family copartnership shall be given due consideration in allocating partnership profits *204 and losses." The conflict raises doubt in our minds as to the real intention of the operation of the business in this regard. The partnership agreement further provides that petitioner should be general manager of the "Partnership." There is no indication that the sons or wife were to take any active part in the operation of the business. Rather, the contrary appears to be true that petitioner would continue to "run" the business as before January 1, 1942. The lack of reality of a true partnership is further demonstrated in the fact that petitioner's wife, Margaret Trepte, is one of the alleged partners, yet there is no showing whatsoever of contributed capital or services on her part, as required by the Tower case. There is no showing of any business activity on her part in connection with the "Partnership." We consider the lack of facts in this regard important in our consideration of the reality of the "Partnership," i.e., whether the four members of the family really intended to operate as a partnership. We believe they did not. Petitioner's reliance on such cases as , and , is of no avail *205 since they are clearly distinguishable from the instant proceeding. As to the partnership question, we, therefore, hold for the respondent. In view of our conclusion it becomes unnecessary to consider the second issue. Decision will be entered for the respondent. Footnotes
*. This item consisted of petitioner's interest in money owed to Golden-Trepte by the United States Navy, for labor and material furnished under the contract.↩
**. The date of the first withdrawal recorded on the books was Nov. 2, 1942. ↩
***. First entry other than $55.00 salary payments - March 19, 1943. ↩
****. Last entry included here - Sept. 26, 1947.↩
*. Total discrepancy of $5,862.37 between stipulation and amount shown in capital account not explained. Discrepancies appear in years 1942-3-4-5-6. ↩
*. First entry recorded on the books - March 27, 1943. ↩
**. $209 unexplained discrepancy between stipulation and amount shown in capital account. ↩
***. Last entry included here - September 3, 1947.↩